UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CARLOS GARCIA,<br>      Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>      Defendant. | )<br>)<br>)<br>)<br>)   Civil No. 3:19-cv-30026-KAR<br>)<br>)<br>)<br>) |

MEMORANDUM AND ORDER ON THE
UNITED STATES' MOTION FOR SUMMARY JUDGMENT
(Dkt No. 36)

ROBERTSON, U.S.M.J.

    Carlos Garcia ("Plaintiff") brings this action against the United States of America ("Defendant") pursuant to the Federal Tort Claims Act ("FTCA") alleging negligence after he was struck by a United States Postal Service vehicle driven by a postal employee. Presently before the court is Defendant's motion for summary judgment (Dkt. No. 36). The parties have consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73 (Dkt. No. 20). For the following reasons, Defendant's motion for summary judgment is GRANTED.

    **I.    STANDARD OF REVIEW**

    Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' when a rational factfinder could resolve it either direction." *Mu v. Omni Hotels Mgmt. Corp.*, 882 F.3d 1, 5 (1st Cir.), *rev. denied*, 885 F.3d 52 (1st Cir. 2018) (citing *Borges ex rel. S.M.B.W. v. Serrano–Isern*, 605 F.3d 1, 4 (1st Cir. 2010)). "A fact is 'material' when its (non)existence could change a case's outcome. *Id.* (citing *Borges*, 605 F.3d

1

at 5). The record is viewed in favor of the nonmoving party, and reasonable inferences are drawn in the nonmoving party's favor. *See Garcia-Garcia v. Costco Wholesale Corp.*, 878 F.3d 411, 417 (1st Cir. 2017) (citing *Ameen v. Amphenol Printed Circuits, Inc.*, 777 F.3d 63, 68 (1st Cir. 2015)). "Where the moving part[y] … do[es] not have the burden of persuasion at trial and ha[s] 'suggested that competent evidence to prove the case is lacking, the burden devolves upon the nonmovant-plaintiff to "document some factual disagreement sufficient to deflect brevis disposition."'" *Burke v. Town of Walpole*, 405 F.3d 66, 76 (1st Cir. 2005) (quoting *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir. 1992)).

Local Rule 56.1 requires a moving party to "include a concise statement of the material facts of record as to which the moving party contends there is no genuine issue to be tried" with citations to the record. L.R. 56.1. In response, the non-moving party must set out his own statement with citations to the record showing that "there exists a genuine issue to be tried." *Id*. Unless the non-moving party's statement controverts the moving party's statement, the moving party's facts are "admitted by [the] opposing part[y]." *Id*. *See also Aegis Sec. Ins. Co. v. M.E. Smith, Inc.*, 404 F. Supp. 3d 352, 353 (D. Mass. 2019) (citing *Fid. & Guar. Ins. Co. v. Boustris*, Civil Action No. 08–cv–11198–RGS, 2010 WL 4183879, at *3 (D. Mass. 2010) (deeming the movant's Local Rule 56.1 statement admitted where the opposing party failed to controvert it as required by the rule).

II.     FACTUAL BACKGROUND

     A.  Scope of the Record

Plaintiff argues that no weight should be given to the affidavit and attached expert report of David J. Bizzak, Ph.D., P.E, that Defendant submitted in support of its motion for summary judgment. Therefore, it is necessary as an initial matter to determine whether the court should

take Dr. Bizzak's opinions into consideration in connection with Defendant's motion for summary judgment.

Federal Rule of Evidence 702 ("Rule 702") governs the admissibility of expert evidence. Rule 702 codified the Supreme Court's holding in *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993), and its progeny, *see United States v. Diaz*, 300 F.3d 66, 73 (1st Cir. 2002), and provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 is meant to ensure that "a proposed expert witness [is] sufficiently qualified to assist the trier of fact, and [ ] his or her expert testimony [is] relevant to the task at hand and rest[s] on a reliable basis." *Diaz*, 300 F.3d at 73.

Here, Plaintiff does not challenge Bizzak's qualifications as an expert in the area of accident reconstruction, nor could he successfully do so. Dr. Bizzak possesses Bachelor of Science, Master of Science, and Doctor of Philosophy degrees in mechanical engineering, has more than 30 years of experience as a consulting engineer, and has performed over 650 traffic accident reconstructions, 80 of which have involved a collision between a vehicle and a

pedestrian or bicyclist (Dkt. No. 38-5 at 6).  Plaintiff does, however, object to Dr. Bizzak's opinion on both relevance and reliability grounds.[1]

Regarding relevance, Plaintiff argues that Dr. Bizzak's opinions provide little to no assistance to a trier of fact in understanding or determining causation because they fail to account for O'Donnell's duty leading up to the collision.  The court disagrees.  Plaintiff's primary argument is that O'Donnell had a duty to slow down in anticipation of pedestrians on the stretch of Worthington Street where the accident occurred.  Dr. Bizzak explicitly considered whether the collision could have been avoided if O'Donnell had been driving at a significantly reduced speed and determined that it could not (Dkt. 38-5 at 8).  Thus, his opinion easily meets the relevance standard.  *Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Sec. (USA) LLC*, 752 F.3d 82, 91, 91 (1st Cir. 2014); *see also* Fed. R. Evid. 702(a).

As to reliability, Plaintiff argues that Dr. Bizzak assumed facts not in evidence (i.e. that Garcia was moving at the normal gait of a man in his 50s and that the time required for a motorist to perceive and react is 1.5 seconds), and failed to consider additional factors (i.e. gradients in the roadway, lighting at the time, speed, and sight lines).  Dr. Bizzak did consider speed and lighting, and Plaintiff fails to explain – or offer countervailing evidence, expert or otherwise – how Dr. Bizzak's failure to consider road gradients or sight lines would undermine his opinions.  Further, "an expert is entitled to rely on facts and/or data which have not been admitted into evidence if the expert's reliance on those facts or data is reasonable," where "such

---

[1] Plaintiff also objects to Dr. Bizzak's opinion because it embraces an ultimate issue.  The court readily rejects this argument.  Federal Rule of Evidence 704 explicitly provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). *See also Peckham v. Cont'l Cas. Ins. Co.*, 895 F.2d 830, 837-38 (1st Cir. 1990) (citing Fed. R. Evid. 704(a) in rejecting the argument that the expert could not opine on the issue of causation as it was the "ultimate issue" for jury resolution).

4

reasonableness is measured against the facts or data upon which experts in the particular field normally rely." *Int'l Adhesive Coating Co., Inc. v. Bolton Emerson Intern, Inc.*, 851 F.2d 540, 544 (1st Cir. 1988).  Here, there is no question that experts in Dr. Bizzak's field rely on standard reaction times and average walking speeds.  *See Jayne v. City of Sioux Falls*, 4:18-CV-04088-KES, 2020 WL 2129599, at * (D.S.D. May 5, 2020) (denying a motion to exclude expert testimony where the expert relied on average walking speeds to calculate how far a person could walk in a set amount of time); *Nna v. American Standard, Inc.*, 630 F. Supp. 2d 115, 135 (D. Mass. 2009) (finding expert accident reconstruction testimony admissible over the defendant's objection where the expert relied on a standard reaction time of no more than 1-1.5 seconds drawn from scientific literature and where reliance on such a standard reaction time was common practice).  Nor is there anything improper about Dr. Bizzak utilizing an average walking speed for a man in his 50's in light of O'Donnell's testimony.  While O'Donnell testified that Plaintiff appeared to have "a long stride," he was unequivocal that he was not running (Dkt. No. 43-1 at 4-5).  Accordingly, the court will consider Dr. Bizzak's opinions.

B. Facts[2]

On November 13, 2017, Plaintiff was injured when he was struck by a United States Postal Service motor vehicle driven by postal service employee Sean O'Donnell.  Plaintiff has worked as a handyman at Tapia Market & Deli ("Tapia Market"), which is located at 935 Worthington Street, Springfield since 2001 or 2002 (Def. SOF ¶ 3).  On the day of the accident, Plaintiff went to work and parked his car in the lot behind Tapia Market and Worthington Discount Liquors, which is located next door (Def. SOF ¶ 4).  Later, Plaintiff left Tapia Market

---

[2] Because Plaintiff failed to submit a separate statement of disputed facts pursuant to Local Rule 56.1, the court deems Defendant's Local Rule 56.1 statement admitted, and the following facts are derived therefrom.

to go to Jumbo Supermarket, which is across the street (Def. SOF ¶ 5).  In order to get to Jumbo Supermarket, Plaintiff exited Tapia Market, turned right, and walked down the block to the intersection of Worthington Street and Armory Street, where there is a crosswalk (Def. SOF ¶ 7).  However, when Plaintiff left Jumbo Supermarket to return to his car, rather than returning to the crosswalk at the intersection of Worthington and Armory Streets, Plaintiff decided to cross directly in front of Jumbo Supermarket, where there is no crosswalk (Def. SOF ¶¶ 6, 9).  Plaintiff stepped off the curb between two cars parked directly outside Jumbo Supermarket (Def. SOF ¶ 11).  Plaintiff did not see any oncoming cars as he went to cross the street (Def. SOF ¶ 15).  He does not remember what happened next (Def. SOF ¶ 16).

At that time, O'Donnell was returning to the postal service's main building at 1883 Main Street in Springfield ("Main Street Post Office") (Def. SOF ¶ 17).  O'Donnell did not have a regular route at the time, but he was familiar with the area where the accident occurred and was aware that pedestrians in that area cross the street outside of the crosswalk (Def. SOF ¶ 18).  O'Donnell was in no rush to return to the Main Street Post Office and was traveling at a speed of 30 miles per hour with his headlights on as he approached Jumbo Supermarket (Def. SOF ¶¶ 24, 27).  It was dark out, and O'Donnell noted lights on the oncoming vehicles and a bright sign on the side of Jumbo Supermarket; the lights did not affect his ability to see the road ahead of him or the area where cars were parked to his right along the northern side of Worthington Street, although he did have some difficulty seeing pedestrians on the sidewalk all the way to his left or right side (Def. SOF ¶¶ 28-31).  As O'Donnell approached Jumbo Supermarket, he saw Plaintiff stepping into the travel lane from between two parked cars, which were not "taller than a person" (Def. SOF ¶ 32).  O'Donnell immediately applied his brake but was unable to stop before hitting

6

Plaintiff, who was looking in the opposite direction at the time (Def. SOF ¶¶ 33-34, 39). The collision occurred almost immediately after Plaintiff stepped into the road (Def. SOF ¶ 35).

Heather Massoia, who was traveling on Worthington Street in the opposite direction of O'Donnell, saw Plaintiff step from between the two parked cars into the path of O'Donnell's vehicle (Def. SOF ¶¶ 37-38). Massoia tried to sound her horn to alert Plaintiff, but there was no time to do so (Def. SOF ¶ 40). After the accident, police and medical personnel arrived at the scene; O'Donnell was not cited in connection with the accident (Def. SOF ¶¶ 41-42).

Defendant has retained the services of David Bizzak, Ph.D., P.E., in connection with the lawsuit (Def. SOF ¶ 44). Dr. Bizzak calculated that, based on the walking speed for males in their 50s, no more than 1.5 seconds passed between Plaintiff stepping from between the parked cars and the collision (Def. SOF ¶ 45). According to Dr. Bizzak, the time required for a motorist to perceive and respond to a potential hazard is generally acknowledged to be no more rapid than 1.5 seconds (Def. SOF ¶ 46). Based on O'Donnell's vehicle speed of 30 miles per hour just prior to the accident, Dr. Bizzak calculated that O'Donnell reacted in less than a second and applied the brakes 0.55 seconds before the accident (Def. SOF ¶ 47). In Dr. Bizzak's opinion, O'Donnell could not have avoided a collision with Plaintiff even if he had been traveling at a significantly slower speed (Def. SOF ¶ 48).

### III. DISCUSSION

Plaintiff asserts a single claim of negligence against Defendant, alleging that O'Donnell breached a duty of care owed to Plaintiff in the operation of a postal service vehicle. (Dkt. No. 1 at 4-6). Plaintiff contends that O'Donnell's alleged breach caused the collision and his injuries (Dkt. No. 1 at 4-6). Because the incident occurred in Massachusetts, Massachusetts tort law applies. *Hewitt v. United States*, 550 F. Supp. 589, 591 (D. Mass. 1982) ("Pursuant to the

Federal Tort Claims Act … the trial court applies the substantive law of the state where the act of omission occurred, 28 U.S.C. § 1346(b).").

In a negligence action, the plaintiff "has the burden of proving each and every element of that claim: duty, breach of duty (or, the element of negligence), causation (actual and proximate) and damages." *Ulwick v. DeChristopher*, 582 N.E.2d 954, 958 (Mass. 1991). "Causation has traditionally involved two separate components: the defendant had to be both a factual cause (or 'cause in fact') and a legal cause of the harm." *Doull v. Foster*, 163 N.E.3d 976, 982-83 (Mass. 2021). "Generally, a defendant is a factual cause of a harm if it "would not have occurred 'but for' the defendant's negligent conduct." *Id*. at 983. "Additionally, for the defendant to be liable, the defendant must also have been a legal cause of the harm. This means that the harm must have been 'within the scope of the foreseeable risk arising from the negligent conduct.'" *Id*. (quoting *Leavitt v. Brockton Hosp., Inc.,* 907 N.E.3d 213, 220 (Mass. 2009)).

Plaintiff's negligence claim is based largely on alleged violations of the Massachusetts statutes, Mass. Gen. Law ch. 90, §§ 14, 17.[3] *See Milbury v. Turner Ctr. Sys.*, 174 N.E. 471, 472 (Mass. 1931) ("It is the law that a violation of a statute or ordinance is evidence of negligence."). According to Plaintiff, O'Donnell violated Mass. Gen. Law ch. 90, §§ 14, 17 by not slowing his vehicle on the portion of Worthington Street where the accident occurred because he knew it to be an area of high foot traffic where it was not uncommon for people to cross the street outside of a crosswalk. In addition, under Massachusetts common law, an operator of a motor vehicle is under a duty to exercise a reasonable degree of care to avoid injury to pedestrians. *Woods v.*

---

[3] Section 14 requires the operator of a motor vehicle to slow down "[u]pon approaching a pedestrian who is upon the traveled part of any way," and where his view is obstructed. Section 17 provides that, "notwithstanding the establishment of a speed limit, every person operating a motor vehicle shall decrease the speed of the same when a special hazard exists with respect to pedestrians."

*O'Neil*, 767 N.E.2d 1119, 1122 n.5 (Mass. App. Ct. 2002) (citing *Buckman v. McCarthy Freight Sys., Inc.*, 70 N.E.2d 524, 525 (Mass. 1947)).  Plaintiff claims that O'Donnell's failure to control his speed or pay proper attention was a breach of this duty.[4]

Defendants do not dispute the existence of a duty owed by O'Donnnell to pedestrians, including Plaintiff.  Rather, Defendant argues that even if Plaintiff could establish that Mr. O'Donnell breached these duties of care to Plaintiff, he cannot provide evidence sufficient to establish causation, which is an "essential element" of Plaintiff's case.[5]  *Glidden v. Maglio*, 722 N.E.2d 971, 974 (Mass. 2000).  Because of this absence of evidence, so the argument goes, the United States is entitled to summary judgment.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

---

[4] In his complaint, Plaintiff alleged that O'Donnell committed other breaches, including failing to maintain his postal truck, failure to sound the horn, and failure to brake or yield (Dkt. No. 1 at 4-5).  However, Plaintiff does not press these theories on summary judgment, and, therefore, the court deems them waived.  *Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667, 678 (1st Cir. 1995) ("Even an issue raised in the complaint but ignored at summary judgment may be deemed waived.").

[5] Violation of a statute in Massachusetts "does not constitute negligence per se," and the plaintiff still must prove causation.  *Bennett v. Eagle Brook Country Store, Inc.*, 557 N.E.2d 1166, 1168 (Mass. 1990).  *See also Roberts v. Southwick*, 614 N.E.2d 659, 665 (Mass. 1993) (O'Connor, J., concurring) ("This court has never held that safety statutes … are admissible to prove causation.  Negligence and causation are separate matters.").  Moreover, the rule of *res ipsa loquitur* does not apply in the case of an automobile accident.  *See Ellis v. Ellison*, 175 N.E. 502, 503 (Mass. 1931).

The court agrees with Defendant that Plaintiff's case founders on the element of but-for causation. Generally, the question of whether the defendant's breach and the damage were causally related is a question for the trier-of-fact. *Jupin v. Kask*, 849 N.E.2d 829, 835 (Mass. 2006). "However, where no rational finder of fact could find based on the evidence in favor of the plaintiff on the element of causation, summary judgment is proper." *Aulson v. Stone*, 150 N.E.3d 798, 802 (Mass. App. Ct. 2020) (citing *Glidden*, 722 N.E.2d at 974-75). On the record before the court, this is such a case.

Plaintiff is unable to point to any evidence supporting an inference that O'Donnell could have avoided hitting Plaintiff if he had been driving slower or had been keeping a better lookout.[6] Regarding his speed, O'Donnell testified that he was traveling at 30 mph, and there is no evidence in the record to contradict this testimony. At the time of the collision, Plaintiff stepped from between two parked cars directly into the path of the Postal Service vehicle O'Donnell was operating. Massoia, the only witness to the accident, testified that there was no time between when Plaintiff stepped into the travel lane and the collision. Moreover, Defendant's unrebutted expert evidence establishes that O'Donnell could not have avoided a collision, even if he was traveling at a speed significantly slower than 30 mph. Based on Dr. Bizzak's calculations, only 1.5 seconds passed between Plaintiff stepping into the travel lane and the collision, and the time required for a motorist to perceive and respond to a potential hazard, such as a pedestrian walking into his or her lane of travel, is generally acknowledged to be no more rapid than 1.5 seconds. According to Dr. Bizzak's testimony, O'Donnell reacted in less

---

[6] Plaintiff states in his opposition to Defendant's motion for summary judgement that, "but-for Mr. O'Donnell's failure to slow and look for pedestrians, such as the Plaintiff, the Plaintiff would not have been struck and would not have suffered the significant injuries he suffered" (Dkt. No. 43 at 5). Plaintiff, however, offers no evidentiary support for this bald assertion.

than a second, applying his brakes before he hit Plaintiff. Because of the absence of evidence that O'Donnell could have avoided the collision if he had been driving at a significantly slower speed, Plaintiff has not established that the accident was causally related to O'Donnell's failure to drive more slowly through this block of Worthington Street. Therefore, Defendant is entitled to summary judgment on this theory of liability. *See Lindgren v. Marraffa*, 215 N.E.2d 110, 112 (Mass. 1966) ("But there is nothing in the record to show that had Burchstead been traveling at twenty-five miles an hour he could have seen, in time to avert the collision, that Lindgren was going to come straight through the crossover."); *Ellis*, 175 N.E. at 503 ("If it be assumed that the defendant was operating his car at a speed which was prima facie greater than reasonable (G.L. c. 90, § 17), there was nothing to show that the speed was causally related to the collision."); *Walker v. Horion*, No. 00-P-1062, 2002 WL 1461951, at *2 (Mass. App. Ct. 2002) ("[T]here was no evidence proffered that, had the defendant been traveling at fifty-five miles per hour, he could have seen Walker in time to stop or avoid hitting her.").

    Nor has Plaintiff pointed to any evidence supporting an inference that O'Donnell could have avoided the collision if he had been keeping a better lookout or been more attentive. According to O'Donnell, he first saw Plaintiff when he stepped from between two parked cars directly into the path of the Postal Service vehicle. There is no evidence in the record to show or suggest that O'Donnell could have seen Plaintiff sooner if O'Donnell had been more attentive. Massoia, the only other witness to the accident, like O'Donnell, only saw Plaintiff when Plaintiff stepped into the street in front of the Postal Service vehicle. No other witnesses have testified that Plaintiff would have been visible to O'Donnell before he stepped from between the two parked cars. Thus, Plaintiff's claim that the accident could have been avoided if O'Donnell had been more attentive is speculative and insufficient to defeat Defendant's motion for summary

judgment.  Because Plaintiff cannot establish causation on his inattentiveness theory either, Defendant is entitled to summary judgment on it as well.  *Falvey v. Hamelburg*, 198 N.E.2d 400, 402 (Mass. 1964) ("There was no evidence that the defendant could have seen the plaintiff for more than an instant, if at all, before the impact."); *Woods v. De Mont*, 77 N.E.2d 220, 221 (Mass. 1948) ("It would be the result of pure speculation to find that the operator had a reasonable opportunity to avoid the accident.); *Rose v. Silveira*, 63 N.E.2d 895, 896 (Mass. 1945) ("It could not have been found that the defendant saw, or in the exercise of proper care could have seen, the plaintiff, if at all, for more than an instant before the accident."); *Luvera v. DeCaro*, 57 N.E.2d 548, 549 (Mass. 1944) ("There is nothing in the record in the present case to show that the defendant saw the plaintiff, or in the exercise of due care could have seen him, in time to avert the collision.  Any such conclusion would be based on conjecture and not on fact."); *Lynch v. Krancer*, 21 N.E.2d 376, 376-377 (Mass. 1939) ("It could not be found that the plaintiff was seen, or in the exercise of proper care on the defendant's part, could have been seen by the defendant, if at all, for more than an instant before the accident."); *Whalen v. Mutrie*, 142 N.E. 45, 46 (Mass. 1924) ("There was no evidence to prove that the driver of the truck saw the plaintiff's intestate, or in the exercise of proper care could have seen him until the moment of the collision ….).

      The only case cited by Plaintiff to support his argument that O'Donnell breached a duty to him by inattentiveness is *McCarthy v. Rench*, No. 1644, 2006 WL 3691679 (Mass. App. Div. Dec. 11, 2006).  *McCarthy* is readily distinguishable.  In *McCarthy*, the defendant saw the plaintiff on her bicycle when he was approximately 75 feet behind her but continued to operate his motor vehicle within four feet of the curb despite having room to his left in the roadway.  *Id.* at *2.  The court found that the defendant had violated Mass. Gen. Laws ch. 90, § 14, which

requires that a driver "[i]n approaching or passing a person on a bicycle … slow down and pass at a safe distance …."  In reaching its decision, the *McCarthy* court explicitly differentiated the case before it from cases such as *Lynch* and *Ellis* "in which a child or bicyclist darted out into the street from behind a parked car or other obstruction and the motor vehicle operator had no time to react."  *Id*. at *1 n.3.  This case is like *Lynch* and *Ellis* and unlike *McCarthy*.

### IV. CONCLUSION

For the above-stated reasons, Defendant's motion for summary judgment (Dkt. No. 36) is GRANTED.  The clerk's office is directed to close the case.

It is so ordered.

/s/ Katherine A. Robertson
KATHERINE A. ROBERTSON
United States Magistrate Judge

DATED:  October 18, 2021